*The United States of America*

*vs*

*Two Boats, & sundry goods wares & merch[d] claimed by North West Company.*

filed 22[d], april 1806.

Sol. Sibley Att[y]

IN THE SUPREME COURT IN & FOR THE TERRITORY OF MICHIGAN

*The United States of America vs Two Boats &c. and sundry, goods wares & merchandizes, claimed by the North West Company &c.*

MICHIGAN TERRITORY TO WIT—

John Gregory, William McGilivray, Duncan McGillivray, Roderick McKenzie, & William Hallowell with their assotiates, Merchants Subjects of his Britanic Majesty, resident at Montreal in the Province of Lower Canada, trading and carrying on trade and commerce, with the Indians, natives, to the North and North West of Lake Superior, at and from their Stores & houses of Deposit at Kaminitaque Bay on the northern Side of Said Lake in the province of Upper Canada—in his Said Britanic Majestys dominions in America under the firm and Style of the North West Company,

claimants of and to Two certain Boats, with their proper rigging and furniture, also to sundry packages of goods wares and Merchandizes, the proper cargoes of said Two Boats, as particularised and set forth in a certain Libel of Complaint, filed in this Honorable Court, On the 21st day of April A D. 1806, by George Hoffman esquire Collector of the Customs of the United States of America, in and for the port and district of Michilimackinac, in the Territory of Michigan thru, Angus Mackintosh esquire, their agent in this behalf, by Solomon Sibley one of the Attornies of this Court, come and defend &c, when &c. and say that this honourable Court, the said Two Boats, the rigging sails &c, and the Said, goods wares and merchandizes, the proper cargoes of said Two Boats, as particularised and set forth in and by the aforesaid Libel of Complaint of the said George Hoffman, ought not by Judgment, to condemn as forfeited to the use of the said United States &c. as the Said George Hoffman in and by said Libel of Complaint hath prayed, because the said Claimants (Solemnly protesting against the Seisure, and detention of Said Two Boats & Cargoes, as Malicious, illegal, wrongful and oppressive and also solemnly protesting, against all damages, expences, costs and charges, that have or may happen, accrue, arise or be sustained by the Claimants, in the loss, injury and detention of said Boats & Cargoes or in any otherwise whatever, on account of such Seizure and detention, and also solemnly protesting that the goods wares & merchandizes so seized, were never intended or designed by the claimants, to be imported into the Territory or territories of the Said United States of America, or sold, vended or disposed of therein by way of merchandizing) for plea of answer, in this behalf Say that your Claimants on or about the 25th of April 1805 aforesaid, at the port of Montreal in the province of Lower Canada, did ship on board the Two boats in said libel of complaint mentioned, all and singular the goods wares and merchandizes in Said Libel named and set forth, under one Joseph Labelle, Master or Conductor of said Boats, with orders to the said Labelle to proceed with Said Two Boats and their Cargoes to Kaminitaque Bay on Lake Superior in the province of Upper Canada, by the way of Sandwich in said Upper Canada, with leave to touch at said place) through lake St. Clair and Huron by the known, accustomary and usual rout of Navigation in those waters, for boats and other small craft navigating the same —and on Safe arrival at said Kaminitaque Bay in Lake Superior afores$^{d}$ in the province of upper canada aforesaid, to unload and discharge said Merchandize from on board of said Two Boats, into the store houses of the claimants at that place. And your claimants do further state, that afterward, To wit, on or about the 25th of April 1805 aforesaid, The said Joseph Labelle did depart and leave Montreal with said Two Boats and Cargoes, so by your Claimants Shipped on board the same, on his rout to Kaminitaque Bay aforesaid upon Lake Superior aforesaid, the place assigned him

for the delivery of Said Cargoes as aforesaid and the said Joseph having so departed from Montreal, with his Boats and Cargoes aforesaid, on his way to Kaminitaque Bay aforesaid (having touched at Sandwich in upper Canada aforesaid) did proceed upon his voyage by the most usual, known and accustomary rout or tract of navigation for Boats and other small Water Crafts, navigating upon the Lakes S$^t$ Clair & Huron and the waters thereof, and bound to or from Montreal to Lake Superior aforesaid by the way of Sandwich aforesaid. And your claimants do further aver, That the said Joseph Labelle conductor of said Two Boats and Cargoes, afores$^d$ in prosecution of the voyage aforesaid, afterward Towit, on the eleventh day of June, in the year of our Lord One Thousand Eight hundred & five aforesaid, being off the Island of Michilimackinac on his course by Outard Island so called, which last mentioned Island being from Michilimackinac about 24 miles, and was the nearest land that the s$^d$ Joseph Labelle would make upon the usual course pursued to Kaminitaque Bay aforesaid the place of his destination aforesaid, and because the winds were fresh and the waters of the Lake rough by reason of the waves and great swells therein, thereby rendering it dangerous, hazardous and unsafe, in the opinion & judgment of the said Joseph Labelle, then to make, or attempt to make, the traverse, from his then situation across to said Outard Island, with said Boats The said Joseph from stress of weather, & with a view to the safety of said Boats & cargoes, and to preserve the same, as well as his life as well as the lives of the Boatmen & passengers on board said Boats, and for no other cause or reason what ever, did then & there, To wit about four °Clock in the afternoon of the same day make the Island of Michilimackinac, and there came to an anchor, under the protection of a projection of said Island, at a small distance from the accustomary place of landing, called La Gross Isle, where the said Joseph Labelle, did lay at anchor with the Said Two boats & cargoes consisting of the said Goods wares and merchandizes in the above libel of complaint specified and set forth, for about three hours time after first coming to anchor as last mentioned, and until afterwards, To wit on or about Seven °Clock in the evening of the same eleventh day of June in the year One thousand Eight hundred & five last mentioned, No part of Said goods wares & merchandizes the cargoes of said Two Boats, having been or then were, landed, unloaden or taken on land or shore from on board said Boats, One David Duncan esquire, then Collector of said United States Customs for the port and district of Michilimackinac aforesaid, well knowing the premises, did then and there, wrongfully, illegally and tortiously & without probable cause, Seize upon, and make Seisure, of the Said Two Boats &c. with the cargoes of Merchandizes aforesaid, and in pursuance of such seisure by him made, did then & there wrongfully, illegally & tortiously, detain & keep said Two Boats, the sails, rigging & furniture, to the same

belonging, together with the cargoes, consisting of goods wares and merchandizes as aforesaid shipped & destined as aforesaid, under pretense that the said Two Boats with their said cargoes so seized were forfeited to the use of the United States &c and which said Two Boats with their said cargoes have hitherto been and still are detained from the possession of your claimants the lawful owners of said Boats and cargoes. Which Said Two Boats &c with their cargoes, so by the Said David Duncan Seized, arrested and detained are the Same Two Boats, sails, rigging, goods wares and merchandizes, as are particularly set forth in and by the libel of complaint of the said George Hoffman collector &c filed in this Honorable Court as aforesaid, and no other, all which the said North West Company claimants afores$^d$ are ready to verify— Wherefore the North West Company, claim$^{ts}$ as aforesaid pray Judgment, and that the said Two Boats &c. together with their Cargoes, as aforesaid, so seized and libelled as aforesaid, by the final decree & determination of this Hon$^l$ Court, may be speedily restored to your claimants, together with damages for the seizure & detention, as well as their costs &c.

by SOL. SIBLEY Attorney for
Claimants.

[In the handwriting of Solomon Sibley

Acc$^t$ of Goods Wares & Merchandizes Seized at
Michilimackinac
1806

[Case 12, Paper 2]

*Inventory of Goods, the property of the North West Company Seized at Michilimackinac 11th June 1805*

* * * * *

[The goods listed are the same as set forth
in copy of libel, *supra.*]

* * * * *

Michilimackinac 5th Nov$^r$ 1805—
For David Duncan
Collector

DAN DALY

Depositions

Taken at Detroit before
Augustus B. Woodward—
Chief Justice

filed 7th august 1805

PETER AUDRAIN clerk.

[Case 12, Paper 3]

TERRITORY OF MICHIGAN, TO WIT;

On this day, Wednesday the seventh day of August one thousand eight hundred five, at the house of James May, in Detroit, at eleven of the clock in the forenoon, personally appeared before me the subscriber, one of the judges of the Territory of Michigan, Joseph La Belle, proposed to be examined as a witness. At the same time appeared Elijah Brush esquire on the part of the United States of America in this behalf, and Solomon Sibley esquire on the part of Angus M<sup>c</sup>Intosh, who is the general agent in this part of the country of the northwest company, and the special agent of the said company in this behalf, together with the said Angus M<sup>c</sup>Intosh himself. Pursuant to the acts of the Congress of the United States of America in this behalf made, and by consent of the parties, I have proceeded to take the deposition of Joseph Labelle of the age of about forty eight years, of Lower Canada, residing more than one hundred miles from this place, and being about to depart out of the United States, who being first duly sworn deposes and says, that he was engaged by the north west company to conduct three barges from Montreal, one of them to be left at the house of Angus M<sup>c</sup>Intosh, the other two to go to a bay on the British side of Lake Superior called Kaminitaque Bay. He set out on the twenty fifth day of April one thousand eight hundred five. From Detroit he kept the American shore of Lake Huron. It is the known and established route. He has been in the habit of going many years. About the eleventh or fourteenth day of June he arrived at the point called la grosse isle, a point of Michilimackinac island, about twenty five or thirty arpents from the fort, about four of the clock in the afternoon. He slept the preceding night on shore thirty-five or forty miles back. On account of the wind, and for no other reason, he put into grosse isle. If the wind had fallen he should not have put into grosse isle at all, but

should have made the traverse of about four leagues to a small island called outard island. Where he landed the shore was shallow and the boats lay off twelve or fourteen feet in the water, the painters being fastened on the shore. One of the owners, Mr. M<sup>c</sup>Koy was on board, and ordered the tent to be put up on shore while he took a walk to the fort, but no other article excepting the tent, and a kettle to cook with was taken on shore. Not a single article of the merchandize. The deponent then went to the fort. The soldiers had taken away the boats to the fort. He met them as he came from the fort. They were unloading the boats near the fort and it was now the commencement of candle light. This deponent knows nothing further relating to the seizure; he demanded of the soldiers why they seized the boat; they answered because he hid, why did he not come directly to that place. He answered he knew his business the waves were too heavy for him to proceed, he put in there as a place of safety, he had no other intention. The route the deponent pursued was the customary route. The goods are deposited at the sault of St. Mary on the British side and then taken across the portage into Lake Superior on the British side. Thence they go through the Lake on the British side to kaminitaque bay still on the British side. It was his own will as navigator to stop at grosse isle not the order of M<sup>r</sup> M<sup>c</sup>Coy or any other person. The wind was rather favorable but too high and the navigation on that account too dangerous. It was a flat bottomed barge. He had not sailed that day but rowed all day. The wind was not so high when he stopped as it had been, but he had been protected before by the land, and now that he had to make the traverse he lost that protection. Given under my hand, the deponent first subscribing the same with his mark in identification, the whole being first truly interpreted to him in the french language by a sworn interpreter, the day and year first above written.

his

JOSEPH   X   LA BELLE              AUGUSTUS B. WOODWARD.

mark

[In the handwriting of Augustus B. Woodward]